## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | |
|---|---|
| HD SILICON SOLUTIONS LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NXP SEMICONDUCTORS N.V., NXP USA, INC., FREESCALE SEMICONDUCTOR HOLDINGS V, INC., and FREESCALE SEMICONDUCTOR HOLDING LIMITED LIABILITY COMPANY,<br><br>　　　　　Defendants. | Civil Action No. 1:25-cv-1320<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff HD Silicon Solutions LLC ("HDSS"), by and through its attorneys, for its Complaint against Defendants NXP Semiconductors N.V., NXP USA, Inc., Freescale Semiconductor Holdings V, Inc., and Freescale Semiconductor Holding LLC ("Defendants") alleges as follows:

## PRELIMINARY STATEMENT

1.　　This is a civil action for patent infringement under the patent laws of the United States, 35 U.S.C. § 1 *et seq.,* of HDSS's United States Patent Numbers 7,810,002, 6,774,033, 7,600,166, 7,334,173, 9,436,264, and 7,260,731 (collectively, the "Asserted Patents"), based on Defendants' manufacture, use, importation, offer for sale, and sale of devices in the United States that infringe the Asserted Patents, including the Infringing Products, attached hereto as Exhibit 1.

## JURISDICTION AND VENUE

2.      This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

3.      This Court has specific and general personal jurisdiction over Defendants in this district because of Defendants' presence in this judicial district. Defendants have availed themselves of the laws of Texas. Defendants have derived substantial revenue from sales of the Infringing Products in the State of Texas and have systematic and continuous business contacts with the State of Texas. HDSS's claims arise out of and relate to, in part, Defendants' contacts with the State of Texas. Defendants conduct business within the State of Texas and have a registered agent in Texas.

4.      Venue is proper in this judicial district with respect to Defendant NXP Semiconductors N.V. pursuant to 28 U.S.C. § 1391(c)(3).

5.      Venue is proper in this judicial district with respect to Defendants NXP USA, Freescale Semiconductor Holdings V, Inc., and Freescale Semiconductor Holding LLC pursuant to 28 USC §§ 1391(b), 1391(c), and 1400(b). Defendants have committed acts of infringement in this district; have transacted business in this district, and have regular and established places of business in this district.

6.      Defendants maintain regular and established places of business within the Western District of Texas including their U.S. corporate headquarters at the "Oak Hill" location in Austin, Texas—which also serves as a design and manufacturing facility—and a separate manufacturing facility in Austin, Texas.[1] Additionally, Defendants opened a Smart Home Innovation Lab at the

---

[1]      NXP SEMICONDUCTORS, https://www.nxp.com/company/about-nxp/worldwide-locations/united-states:USA (last visited Aug. 14, 2025).

Oak Hill location on May 22, 2024.[2] The Oak Hill facility spans approximately 1.5 million square feet and sits on a 155-acre site.[3]

7.      Defendants have a longstanding presence in Austin, Texas, dating back to at least 2015, following its merger with the Austin-based Freescale Semiconductor. [4]

8.      Defendants employ approximately 1,300 individuals in the Austin area as of 2024, with further plans for expansion. [5]

## PLAINTIFF

9.      HDSS is a limited liability company organized and existing in Texas, with its principal place of business at 5900 Balcones Drive, Suite 100, Austin, Texas 78731.

## DEFENDANTS

10.     Defendant NXP Semiconductors N.V. is a public Dutch company with its headquarters in Eindhoven, Netherlands.

11.     Defendant NXP USA, Inc. is a registered subsidiary of NXP Semiconductors N.V., located at 6501 William Cannon Dr. West, Austin, Texas 78735.[6]

---

[2] Katy McAfee, *Chipmaker NXP unveils smart-home lab at Oak Hill facility*, COMMUNITY IMPACT (May 28, 2024, 1:26 PM), https://communityimpact.com/austin/south-central-austin/development/2024/05/28/chipmaker-nxp-unveils-smart-home-lab-at-oak-hill-facility/.

[3] NXP SEMICONDUCTORS, https://www.nxp.com/docs/en/fact-sheet/OAKHILL_FAST_FACTS.pdf (last visited Aug. 8, 2025).

[4] *NXP Semiconductors acquires Austin's Freescale in $40 billion merger*, KVUE ABC (Mar. 2, 2015), https://www.kvue.com/article/news/local/nxp-semiconductors-acquires-austins-freescale-in-40-billion-merger/269-152591429.

[5] Qin Gu, *NXP considers Austin for more semiconductor manufacturing, up to 800 new jobs*, REAL INTERNATIONAL (Mar. 11, 2024), https://realinternational.com/nxp-considers-austin-for-more-semiconductor-manufacturing-up-to-800-new-jobs/.

[6] NXP Semiconductors N.V., Form 10-K (Feb. 20, 2025), https://investors.nxp.com/node/23781/html.

12.     Defendant Freescale Semiconductor Holdings V, Inc. is a registered subsidiary of NXP Semiconductors N.V., located at 6501 William Cannon Dr. West, Austin, Texas 78735.[7]

13.     Defendant Freescale Semiconductor Holding Limited Liability Company is a registered subsidiary of NXP Semiconductors N.V.[8] Upon information and belief, this Defendant has regular and established places of business in this judicial district.

## FACTS

A.     **The '002 Patent**

14.     United States Patent 7,810,002 ("the '002 Patent"), entitled "Providing Trusted Access to a JTAG Scan Interface in a Microprocessor," was duly and legally issued on October 5, 2010. Attached as Exhibit 2 is a true and accurate copy of the '002 Patent.

15.     The '002 Patent was issued from a continuation of the same application from which United States Patent 7,600,166 ("the '166 Patent") was issued.

16.     HDSS is the owner by assignment of the '002 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '002 Patent on November 12, 2020.

17.     The '002 Patent expired on June 28, 2025. Defendants' infringing activity occurred prior to the '002 Patent expiration.

18.     On April 4, 2023, a final written decision regarding IPR2021-01567 was entered for the '002 Patent. Claims 1-6, 8, 9, 11, 12, and 15-19 were determined to be unpatentable. Claims 7, 10, 13, 14, and 20 remain valid and enforceable.

---

[7] SEC Form 3, Initial Statement of Beneficial Ownership of Securities (June 9, 2016), available at *https://www.sec.gov/Archives/edgar/data/1272547/0000899243-16-031444-index.htm.*
[8]     NXP    Semiconductors    N.V.,    Form    10-K    (Feb.    20,    2025), https://investors.nxp.com/node/23781/html.

**B.    The '033 Patent**

19.    United States Patent 6,774,033 ("the '033 Patent"), entitled "Metal Stack for Local Interconnect Layer," was duly and legally issued on August 10, 2004. Attached as Exhibit 3 is a true and accurate copy of the '033 Patent.

20.    HDSS is the owner by assignment of the '033 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '033 Patent on November 12, 2020.

21.    The '033 Patent expired on November 4, 2022. Defendants' infringing activity occurred prior to the '033 Patent expiration.

22.    On November 7, 2022, a final written decision regarding IPR2021-00752 was entered for the '033 Patent. Claims 1-7 and 9-17 were determined to be unpatentable. On February 6, 2025, the United States Court of Appeals for the Federal Circuit affirmed this decision in full. Claim 8 remains valid and enforceable.

**C.    The '166 Patent**

23.    The '166 Patent, entitled "Method and System for Providing Trusted Access to a JTAG Scan Interface in a Microprocessor," was duly and legally issued on October 6, 2009. Attached as Exhibit 4 is a true and accurate copy of the '166 Patent.

24.    HDSS is the owner by assignment of the '166 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '166 Patent on November 12, 2020.

25.    The '166 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

**D.     The '173 Patent**

26.     United States Patent 7,334,173 ("the '173 Patent"), entitled "Method and System for Protecting Processor from Unauthorized Debug Access," was duly and legally issued on February 19, 2008. Attached as Exhibit 5 is a true and accurate copy of the '173 Patent.

27.     HDSS is the owner by assignment of the '173 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '173 Patent on November 12, 2020.

28.     The '173 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

**E.     The '264 Patent**

29.     United States Patent 9,436,264 ("the '264 Patent"), entitled "Saving Power when in or Transitioning to a Static Mode of a Processor," was duly and legally issued on September 6, 2016. Attached as Exhibit 6 is a true and accurate copy of the '264 Patent.

30.     The '264 Patent was issued from a continuation of United States Patent 7,870,404.

31.     HDSS is the owner by assignment of the '264 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '264 Patent on November 12, 2020.

32.     The '264 Patent expired on December 6, 2020. Defendants' infringing activity occurred prior to the '264 Patent expiration.

**F.     The '731 Patent**

33.     United States Patent 7,260,731 ("the '731 Patent"), entitled "Saving Power when in or Transitioning to a Static Mode of a Processor," was duly and legally issued on August 21, 2007. Attached as Exhibit 7 is a true and accurate copy of the '731 Patent.

34.    HDSS is the owner by assignment of the '731 Patent and holds all substantial rights in that patent, including the sole and exclusive right to sue for, and recover damages from, any and all infringements. HDSS was assigned the rights to the '731 Patent on November 12, 2020.

35.    The '731 Patent expired on November 22, 2020. Defendants' infringing activity occurred prior to the '731 Patent expiration.

## G.    Defendants' Infringing Activities and Products

36.    Defendants have and continue to infringe the Asserted Patents by making, using, selling, and offering for sale the Infringing Products in the United States, including this judicial district, and importing into the United States the Infringing Products that are sold in this judicial district.

### a.    The i.MX8 Series processors

37.    Defendants' i.MX8 Series processors infringe at least claim 31 of the '173 Patent. The i.MX8 Series processors infringe at least claim 11 of the '166 Patent. The i.MX8 Series processors infringe at least claims 10 and 13 of the '002 Patent.

38.    The i.MX8 Series processors utilize a Serial Wire Debug (SWD), which replaces the traditional JTAG interface, as a method for debugging and testing. These devices comprise a secure processor and a software layer that is authorized access to trusted resources of said processor. To protect against JTAG manipulation, the secure processors are protected by a software layer which ensures that only authenticated devices can interact with the processor's secure functions. These products use a Secure JTAG Controller (SJC) in conjunction with an Authentication Debug Module (ADM) to enforce authentication protocols before granting JTAG access. JTAG access is restricted unless a challenge/response protocol is successfully executed. An internal register within the secure processor is set when the authentication information is

validated, enabling access to the JTAG interface. An enable switch, coupled to this internal register, controls access to the JTAG interface.[9]

### b.    The i.MX7 Series processors

39.    Defendants' i.MX7 Series processors infringe at least claim 31 of the '173 Patent. The i.MX7 Series processors infringe at least claim 11 of the '166 Patent. The i.MX7 Series processors infringe at least claims 10 and 13 of the '002 Patent.

40.    The i.MX7 Series processors comprise a secure processor and a software layer which is authorized to access trusted resources in the processor. These devices use an SJC to limit JTAG access. There are three security modes—No Debug, Secure JTAG, and JTAG Enabled—which are configured using One-Time Programmable eFuses. Fuse-based security involves programming unique, secret keys directly into eFuses, which are then used to manage access to sensitive features. The Secure JTAG mode limits JTAG access by implementing a challenge/response mechanism. This mechanism uses a challenge value and the associated secret response key. The challenge value is the Device Unique ID which is programmed into the eFuses during manufacturing. The secret response key programmed by the user authenticates information that is required to access the JTAG interface. A software layer then verifies this information by comparing it against the stored response key, or by generating the expected response based on the challenge value. If the keys match, the SJC grants access by setting an internal status register which controls JTAG access. If the keys do not match, JTAG access remains locked.[10]

---

[9] NXP SEMICONDUCTORS, AN12631 Normal and Secure Debug for i.MX 8/8X Family of Applications Processors (Rev. 1, February 20, 2023), https://www.nxp.com/webapp/Download?colCode=AN12631&location=null.

[10] NXP SEMICONDUCTORS, AN4686 Secure Debug in i.MX6/7/8M Family of Applications Processors (Rev. 4, February 5, 2025), https://docs.nxp.com/bundle/AN4686/page/topics/secure_jtag.html.

### c.    The i.MX9 Series processors

41.    Defendants' i.MX9 Series processors infringe at least claim 31 of the '173 Patent. The i.MX9 Series processors infringe at least claim 11 of the '166 Patent. The i.MX9 Series processors infringe at least claims 10 and 13 of the '002 Patent.

42.    The i.MX9 Series processors comprise a secure processor and a software layer which is authorized to access trusted resources in said secure processor. These devices restrict JTAG access and require authentication information to be validated before JTAG access is permitted. JTAG access can be permitted through a challenge/response key mechanism, wherein the software layer of these devices receives authentication information and verifies whether the received information matches the expected information. The devices will then use the JTAG Controller to grant or deny JTAG access accordingly. The JTAG Controller is coupled to an internal register that can control access to the JTAG interface.[11]

### d.    The VFxxx R Series processors

43.    Defendants' VFxxx R Series processors infringe at least claim 31 of the '173 Patent. The VFxxx R Series processors infringe at least claim 11 of the '166 Patent. The VFxxx R Series processors infringe at least claims 10 and 13 of the '002 Patent.

44.    The VFxxx R Series processors comprise a secure processor and a software layer which is authorized to access trusted resources in said secure processor. These devices use fuses to allow or disallow JTAG access. Access is controlled by security level configuration and authentication using the SJC. There are three JTAG security levels: No Debug, Secure JTAG, and JTAG Enable. Secure JTAG mode limits JTAG access by using a challenge/response-based authentication mechanism. For the challenge/response protocol, each chip has its individual

---

[11] NXP SEMICONDUCTORS, i.MX 93 Applications Processor Reference Manual (Rev. 6, July 2, 2025), https://www.nxp.com/webapp/Download?colCode=IMX93RM&location=null

challenge/response pair which is determined at manufacturing time. The external debug machine will be presented with the challenge key and will respond with its response key. The JTAG Controller compares the user's response to the expected response. If the response keys match, JTAG access is granted, otherwise access is denied. The SJC has a 5-bit instruction register which monitors the status of the authentication during challenge/response. The SJC acts as an enable switch to control access to the JTAG interface.[12]

### e.     *The VFxxx F Series processors*

45.     Defendants' VFxxx F Series processors infringe at least claim 31 of the '173 Patent. The VFxxx F Series processors infringe at least claim 11 of the '166 Patent. The VFxxx F Series processors infringe at least claims 10 and 13 of the '002 Patent.

46.     The VFxxx F Series processors comprise a secure processor and a secure software layer which is authorized to access trusted resources within said secure processor. These devices restrict JTAG access by using a challenge/response key authentication mechanism, wherein the software layer of these devices will receive authentication information and verify whether the received information matches the expected information. The devices will then use the SJC to grant or deny JTAG access accordingly. The SJC is coupled to an internal register that can control access to the JTAG interface.[13]

### f.     *The S32G2 processors*

47.     Defendants' S32G2 processors infringe at least claim 31 of the '173 Patent. The S32G2 Series processors infringe at least claim 11 of the '166 Patent. The S32G2 processors

---

[12] NXP SEMICONDUCTORS, VFxxx Controller Reference Manual (Rev. 8, November 2015), https://www.nxp.com/docs/en/reference-manual/VFXXXRM.pdf.
[13] *Id.*

infringe at least claims 10 and 13 of the '002 Patent. The S32G2 processors infringe claim 8 of the '033 Patent.

48.    The S32G2 processors comprise a secure processor and a software layer which is authorized to access trusted resources within said secure processor. These devices restrict JTAG access by using a challenge/response mechanism, wherein the software layer of these devices will receive authentication information and verify whether the received information matches the expected information.[14] These devices will then grant or deny JTAG access accordingly. An internal register of the secure processor can control access to the JTAG interface.

49.    Defendants' S32G2 processors utilize the 16-nanometer (nm) FinFET process technology.[15] These processors comprise a local interconnect layer in an integrated circuit. This local interconnect layer is made by depositing a first film comprising titanium nitride over an oxide layer. A second film comprising tungsten is deposited over the first film. These film layers form a metal stack of the local interconnect layer having a sheet resistance of 10 Ohm/sq or less.

### g.    *The S32V2 processors*

50.    Defendants' S32V2 Series processors infringe at least claim 31 of the '173 Patent. The S32V2 Series processors infringe at least claim 11 of the '166 Patent. The S32V2 Series processors infringe at least claims 10 and 13 of the '002 Patent.

51.    The S32V2 Series processors comprise a secure processor and a software layer which is authorized to access trusted resources in said secure processor. These devices restrict JTAG access by using a challenge/response key authentication mechanism, wherein the software

---

[14]    NXP SEMICONDUCTORS, S32G2 Reference Manual (Rev. 8, February 2024), https://www.nxp.com/webapp/Download?colCode=S32G2RM&location=null    (free    login required)
[15]    NXP SEMICONDUCTORS (Jun, 2, 2021, 4:00 AM), https://www.nxp.com/company/about-nxp/newsroom/NW-NXP-RAMPS-AUTOMOTIVE-PROCESSING-INNOVATION.

layer of these devices will receive authentication information and verify whether the received information matches the expected information. The devices will then use the SJC to grant or deny JTAG access accordingly. The SJC is coupled to an internal register that can control access to the JTAG interface.[16]

### h.    The LPC55S6x Family of microcontrollers

52.    Defendants' LPC55S6x Family of microcontrollers infringe at least claim 31 of the '173 Patent. The LPC55S6x Family of microcontrollers infringe at least claim 11 of the '166 Patent. The LPC55S6x Family of microcontrollers infringe at least claims 10 and 13 of the '002 Patent.

53.    The LPC55S6x Family of microcontrollers comprise a secure processor and a software layer which is authorized to access trusted resources in said secure processor. These devices offer a debug authentication protocol as a tool to authenticate the debugger and grant it access to the JTAG interface. These devices use a challenge/response protocol which assures that only trusted debuggers can access the restricted JTAG interface. This protocol provides a mechanism for the device to authenticate the identity and credentials of the debugger. Until the debug authentication process is complete, the JTAG interface will be non-accessible to the debugger.[17]

### i.    The LPX55S2x/LPC552x Family of microcontrollers

54.    Defendants' LPC55S2x/LPC552x Family of microcontrollers infringe at least claim 31 of the '173 Patent. The LPC55S2x/LPC552x Family of microcontrollers infringe at least

---

[16] NXP SEMICONDUCTORS, S32V231 Reference Manual (Rev. 6, November 17, 2022), https://www.nxp.com/webapp/Download?colCode=S32V234RM&location=null
[17] NXP SEMICONDUCTORS, LPC55S6x Product Data Sheet (Rev. 2.5, August 2024), https://www.nxp.com/docs/en/data-sheet/LPC55S6x.pdf.

claim 11 of the '166 Patent. The LPC55S2x/LPC552x Family of microcontrollers infringe at least claims 10 and 13 of the '002 Patent.

55. The LPC55S2x/LPC552x Family of microcontrollers comprise a secure processor and a software layer which is authorized to access trusted resources within said secure processor. These devices offer a debug authentication protocol as a mechanism to ensure the debugger has the credentials approved by the product manufacturer before granting debug access to the device. The debug authentication protocol is a challenge/response mechanism to ensure the debugger is successfully authenticated before given access to the restricted JTAG interface. This protocol provides a mechanism to authenticate the identity and credentials of the debugger. Until the debug authentication process is complete, the JTAG interface will be non-accessible to the debugger.[18]

### j.    The LPC55S1x/LPC551x Family of microcontrollers

56. Defendants' LPC55S1x/LPC551x Family of microcontrollers infringe at least claim 31 of the '173 Patent. The LPC55S1x/LPC551x Family of microcontrollers infringe at least claim 11 of the '166 Patent. The LPC55S1x/LPC551x Family of microcontrollers infringe at least claims 10 and 13 of the '002 Patent.

57. The LPX55S1x/LPC551x Family of microcontrollers comprise a secure processor and a software layer which is authorized to access trusted resources in said secure processor. These devices offer a debug authentication protocol as a tool to authenticate the debugger and grant it access to the JTAG interface. These devices use a challenge/response protocol which assures that only debuggers in possession of the required debug credentials can access the restricted JTAG interface. This protocol provides a mechanism for a device's debug interface to authenticate the

---

[18] NXP SEMICONDUCTORS, LPC55S6x/LPC55S2x/LPC552x User Manual
(Rev. 2.7, October 3, 2023), https://www.nxp.com/webapp/Download?colCode=UM11126 (free login required).

identity and credentials of the debugger. Until the debug authentication process is complete, the JTAG interface will be non-accessible to the debugger.[19]

### k.    *The i.MX-RT11xx microcontrollers*

58.    Defendants' i.MX-RT11xx microcontrollers infringe at least claim 31 of the '173 Patent. The i.MX-RT11xx microcontrollers infringe at least claim 11 of the '166 Patent. The i.MX-RT11xx microcontrollers infringe at least claims 10 and 13 of the '002 Patent.

59.    The i.MXRT11xx microcontrollers comprise a secure processor and a software layer which is authorized to access trusted resources in the processor. These devices utilize an SJC and a fuse-based challenge/response mechanism to restrict or allow JTAG access. The challenge/response mechanism used to authenticate the JTAG access uses a challenge value and the associated secret response key. The keys are stored in eFuses inside the chip. The challenge value is the Device Unique ID, which is programmed into the eFuses during manufacturing. The user must program the secret response key into the JTAG_RESP eFuses. This response key serves as the authentication information that is required to access the JTAG interface. The software layer verifies authentication by comparing the provided information against the stored response key or by generating the expected response based on the challenge value. If the keys match, the SJC grants access by setting an internal status register. If the keys do not match, JTAG access remains locked.[20]

---

[19] NXP SEMICONDUCTORS, LPC55S1x/LPC551x Product Data Sheet (Rev. 1.8, September 2022), https://www.nxp.com/docs/en/nxp/data-sheets/LPC55S1x_LPC551x_DS.pdf.

[20] NXP SEMICONDUCTORS, AN13133 Secure JTAG for i.MXRT1170 (Rev. 3, February 23, 2022).

### *l.*     *The i.MX-RT600 microcontrollers*

60.     Defendants' i.MX-RT600 microcontrollers infringe at least claim 31 of the '173 Patent. The i.MX-RT600 microcontrollers infringe at least claim 11 of the '166 Patent. The i.MX-RT600 microcontrollers infringe at least claims 10 and 13 of the '002 Patent.

61.     The i.MX-RT600 microcontrollers comprise a secure processor and a software layer which is authorized to access trusted resources of said secure processor. These devices offer a debug authentication protocol as a tool to authenticate the debugger and grant it access to the JTAG interface. These devices use a challenge/response protocol which assures that only debuggers in possession of the required debug credentials can access the restricted JTAG interface. Until the debug authentication process is complete, the JTAG interface will be non-accessible to the debugger.[21]

### *m.*     *The S32K1 Family of microcontrollers*

62.     Defendants' S32K1 Family of microcontrollers infringe at least claim 1 of the '264 Patent. The S32K1 Family of microcontrollers infringe at least claim 1 of the '731 Patent.

63.     The S32K1 Family of microcontrollers includes internal power management features that can be used to control the microcontroller's power usage. These devices provide multiple power options, allowing users to transition to various reduced operation modes. These options include a first regulation mode and a second regulation mode. The processors can transition from a computing mode, including Normal Run or Very Low Power Run, to a reduced operation mode in which a system clock to the processor is disabled: Very Low Power Stop. When entering the reduced operation mode, clocks are shut off in an orderly sequence to safely place the chip in

---

[21]  NXP Semiconductors, RT6xx User Manual (Rev. 1.8, March 5, 2025), https://www.nxp.com/webapp/Download?colCode=UM11147 (free login required).

the targeted low-power state. Upon determining the transition to a low-power mode, a voltage regulator transitions from a first regulation mode to a second regulation mode. The time taken to transition to a reduced operation mode can vary based on processor configuration. Once the device is in the reduced operation mode, Static Random-Access Memory is operational, but the core clock is gated off. Thus, core voltage is adjusted to a value sufficient to maintain memory state, but not sufficient to maintain processing activity.[22]

### n.    *The Kinetis Family of microcontrollers*

64.    Defendants' Kinetis Family of microcontrollers infringe at least claim 1 of the '264 Patent. The Kinetis Family of microcontrollers infringe at least claim 1 of the '731 Patent.

65.    The Kinetis Family of microcontrollers includes internal power management features that can be used to control the microcontroller's power usage. These devices offer multiple power modes to allow users to transition to various reduced operation. These modes include a first regulation mode and a second regulation mode. The processor can transition from a computing mode to a mode in which a system clock to the processor is disabled. When entering a reduced operation mode, the clocks are shut off in an orderly sequence to safely place the chip in the targeted low-power state. The time taken to transition to a reduced operation mode can vary based on processor configuration. Once the device is in a reduced operation mode, Static Random-Access Memory is operational, but the core clock is gated off.[23] Thus, core voltage is adjusted to a value sufficient to maintain memory state, but not sufficient to maintain processing activity.

### o.    *The Layerscape LX2160A processors*

66.    Defendants' Layerscape LX2160A processors infringe claim 8 of the '033 Patent.

---

[22] NXP SEMICONDUCTORS, AN5425 Power Management for S32K1xx (Rev. 1, May 2018), https://www.nxp.com/docs/en/application-note/AN5425.pdf.

[23] NXP SEMICONDUCTORS, AN4503 Power Management for Kinetis MCUs (Rev. 2, April 2015), https://www.nxp.com/docs/en/application-note/AN4503.pdf.

67.    The Layerscape LX2160A processors utilize the 16-nm FinFET process technology.[24] These processors comprise a local interconnect layer in an integrated circuit. This local interconnect layer is made by depositing a first film comprising titanium nitride over an oxide layer. A second film comprising tungsten is deposited over the first film. These film layers form a metal stack of the local interconnect layer having a sheet resistance of 10 Ohm/sq or less.

### p.    The S32R294 processors

68.    Defendants' S32R294 processors infringe claim 8 of the '033 Patent.

69.    Defendants' S32R294 processors utilize the 16-nm FinFET process technology.[25] These processors comprise a local interconnect layer in an integrated circuit. This local interconnect layer is made by depositing a first film comprising titanium nitride over an oxide layer. A second film comprising tungsten is deposited over the first film. These film layers form a metal stack of the local interconnect layer having a sheet resistance of 10 Ohm/sq or less.

70.    Defendants have been infringing and are inducing infringement of the Asserted Patents by actively and knowingly inducing purchasers and owners of Infringing Products to make, use, sell, offer for sale, or import the Infringing Products that infringe the Asserted Patents.

71.    Upon information and belief, future iterations of the Infringing Products will infringe the Asserted Patents.

### COUNT 1
### INFRINGEMENT OF U.S. PATENT NO. 7,810,002

72.    HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

---

[24] Tom R. Halfhill, LX2160A Is NXP's Biggest Multicore (Oct. 16, 2017), 1 https://www.nxp.com/docs/en/supporting-information/LX2160A-NXP-Biggest-Multicore.pdf.
[25] NXP SEMICONDUCTORS (Jun, 2, 2021, 4:00 AM), https://www.nxp.com/company/about-nxp/newsroom/NW-NXP-RAMPS-AUTOMOTIVE-PROCESSING-INNOVATION.

73.    HDSS is the assignee and owner of all right, title and interest to the '002 Patent. HDSS  has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

74.    Defendants, without authorization or license from HDSS, have and are infringing the '002 Patent, including at least claims 10 and 13, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '002 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

75.    Defendants' acts of infringement of the '002 Patent have caused and will continue into cause HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

76.    Defendants' acts of infringement of the '002 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

## COUNT 2
## INFRINGEMENT OF U.S. PATENT NO. 6,774,033

77.    HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

78.    HDSS is the assignee and owner of all right, title and interest to the '033 Patent. HDSS has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

79.    Defendants, without authorization or license from HDSS, have infringed the '033 Patent, including claim 8 by making, using, selling, and/or offering for sale in the United States,

and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '033 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

80.     Defendants' acts of infringement of the '033 Patent have caused HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

81.     Defendants' acts of infringement of the '033 Patent have caused immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

### COUNT 3
### INFRINGEMENT OF U.S. PATENT NO. 7,600,166

82.     HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

83.     HDSS is the assignee and owner of all right, title and interest to the '166 Patent. HDSS has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

84.     Defendants have and are infringing the '166 Patent, including at least claim 11 by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '166 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

85.     Defendants' acts of infringement of the '166 Patent have caused and will continue to cause HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

86.     Defendants' acts of infringement of the '166 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

**COUNT 4**
**INFRINGEMENT OF U.S. PATENT NO. 7,334,173**

87.     HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

88.     HDSS is the assignee and owner of all right, title and interest to the '173 Patent. HDSS has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

89.     Defendants have and are infringing the '173 Patent, including at least claim 31, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '173 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

90.     Defendants' acts of infringement of the '173 Patent have caused and will continue to cause HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

91.     Defendants' acts of infringement of the '173 Patent have caused and will continue to cause immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

## COUNT 5
## INFRINGEMENT OF U.S. PATENT NO. 9,436,264

92.    HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

93.    HDSS is the assignee and owner of all right, title and interest to the '264 Patent. HDSS has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

94.    Defendants have infringed the '264 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '264 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

95.    Defendants' acts of infringement of the '264 Patent have caused HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

96.    Defendants' acts of infringement of the '264 Patent have caused immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

## COUNT 6
## INFRINGEMENT OF U.S. PATENT NO. 7,260,731

97.    HDSS repeats and realleges each of the preceding paragraphs as though fully set forth herein.

98.    HDSS is the assignee and owner of all right, title and interest to the '731 Patent. HDSS has the legal right to enforce the patent, sue for infringement, and seek equitable relief and damages.

99.     Defendants have infringed the '731 Patent, including at least claim 1, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, including within this judicial district, the Infringing Products in violation of 35 U.S.C. § 271(a) through (c). Each and every element of the '731 Patent is literally present in the Infringing Products as described above. To the extent not literally present, HDSS reserves the right to proceed under the doctrine of equivalents.

100.    Defendants' acts of infringement of the '731 Patent have caused HDSS damages for which HDSS is entitled to compensation pursuant to 35 U.S.C. § 284.

101.    Defendants' acts of infringement of the '731 Patent have caused immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. HDSS has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HDSS respectfully requests that this Court enter judgment against Defendants NXP Semiconductors N.V., NXP USA, Inc., Freescale Semiconductor Holdings V, Inc., and Freescale Semiconductor Holdings LLC as follows:

A.      Adjudging that Defendants have infringed and actively induced and contributed to infringement of the '002 Patent, the '033 Patent, the '166 Patent, the '173 Patent, the '264 Patent, and the '731 Patent in violation of 35 U.S.C. § 271 (a) through (c);

B.      Granting an injunction permanently enjoining Defendants, their employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assignees, and all those in active concert and participation with any of the foregoing persons or entities from infringing, contributing to the infringement of, or inducing infringement of the Asserted Patents absent a license to Defendants by HDSS.

C.    Ordering Defendants to account and pay damages adequate to compensate HDSS for Defendants' infringement of the Asserted Patents, including pre-judgment and post-judgment interests and costs, pursuant to 35 U.S.C. § 284;

D.    Ordering an accounting for any infringing sales not presented at trial and an award by the court of additional damages for any such infringing sales;

E.    If Discovery and Evidence in this matter so warrants, declaring this case exceptional and awarding HDSS its reasonable attorney fees, pursuant to 35 U.S.C. § 285; and

F.    Awarding such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

Dated: August 19, 2025

Respectfully submitted,

*/s/ Christopher V. Goodpastor*
Christopher V. Goodpastor
TX Bar No. 00791991
cgoodpastor@dinovoprice.com
**DINOVO PRICE LLP**
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Telecopier: (512) 727-6691

Anthony G. Simon (*request for admission pro hac vice forthcoming*)
Jeremiah W. Nixon (*request for admission pro hac vice forthcoming*)
W. Bret Sullivan (*request for admission pro hac vice forthcoming*)
**THE SIMON LAW FIRM, P.C.**
1001 Highlands Plaza Drive, Suite 300
St. Louis, Missouri 63110
Phone: (314) 241-2929
Fax: (314) 241-2029
asimon@simonlawpc.com
jnixon@simonlawpc.com
bsullivan@simonlawpc.com

*Attorneys for Plaintiff*